Okay, so we will take this case under advisement. Our second case for today will be William Rainsberger v. Charles Benner. Whenever you're ready, Mr. Morgan, we'll hear from you. Thank you, Chief Judge Wood, and may it please the Court. This case is not about William's version of the factual disputes that led the District Court to create a hypothetical affidavit below. Be sure to speak up if you don't mind. Sorry. So this case is not about William's version of the factual disputes that led the District Court to create a hypothetical affidavit below. It's about whether the facts in that hypothetical affidavit and other undisputed information that Detective Benner knew when he submitted it were enough to allow a reasonable police officer to conclude that he had more than a bare suspicion that William was guilty or had committed the crime for which he was arrested. Should we be able to consider that other information that Officer Benner knew that wasn't in the hypothetical affidavit? So I will concede that at the Seventh Circuit, I think it's a little bit unclear. The case we relied on is the Knox case, which arises in the context of a parole violation, and in the Knox case, the Court looked to the parole violation report, which said that a particular meeting had taken place, and there was a factual dispute about whether that meeting took place. That fact fell away, and although that fact fell away, which was the basis for the violation report, the Court looked at other information that the parole officer had at the time and said based on that information, it was enough to establish reasonable suspicion, and that case was the standard because it was a parole case. So let me try this out on you. The Fourth Amendment, of course, is ultimately about the reasonableness of what the police do, but if there's a warrant, we have one set of rules, and if there isn't a warrant, in some ways there are more restrictions on what the officer can do. And certainly if it's an on-the-scene, let's say, arrest, the officer's in hot pursuit, you know, or something like that, then whatever the officer knows could go into the determination of probable cause. But when you go to an issuing judicial authority, magistrate judge, estate judge, whoever that judicial authority is, and present a package of information for that judicial authority, and you say, please give me a warrant, then it seems to me clear that you are relying on that warrant for the validity of the arrest, for the validity of the search, whatever it may be, and things that are inside your head that you don't tell the issuing judicial officer cannot possibly enter into the equation. Now in this instance, the only thing we have is Benner's affidavit. If there had been a witness that had testified, which sometimes there is, if there had been documents that the issuing authority had looked at, all of that would be fine. But the warrant itself is only as good as what the issuing judge thought. Now having said that, we know from Leon that even if the warrant doesn't quite cross the finish line for probable cause, if a reasonable officer could have thought that it did, that's kind of the analogy to arguable probable cause in the warrant situation. So as long as a reasonable officer could have thought that, then you can move down that road. But I really don't think that it makes any sense in the warrant situation to take the Knox approach, which is, of course, quite a different context. There you certainly do want to know whatever was motivating the probation officer to take his action. So I think we need to focus on this hypothetical warrant that the district judge constructed. And certainly we have, obviously, a different view of Knox, and I think that Knox did apply the standard sort of qualified immunity analysis that cited Beauchamp v. City of Noblesville.  That would make one rule for arrests by Benner and a completely different rule for arrests by anybody else because only Benner knows what's inside of Benner's head. I really think it's a rule that fails to appreciate the value of going to the judicial officer to get the warrant. And I think that's fair in the context, again, where it's someone who doesn't – he wasn't the investigator, say, so Benner applied for the affidavit and someone else is. But maybe if Benner had told the issuing officer the rest of the information, he wouldn't have even gotten the warrant, which is, in fact, what happened to him the first time he tries to get a warrant. And certainly there's authority that suggests that an officer can rely on the probable cause conveyed to them from another officer. If it's conveyed, but no one conveyed anything here. Benner writes this affidavit, and that's that. Correct. But here, this isn't a case where Benner got a warrant, and then some other officer relied on the warrant to make an arrest. Benner is the officer. So why should Benner have the benefit of the warrant rule if he doesn't tell the issuing judge critical facts? He doesn't tell the issuing judge that the DNA swab exonerates Mr. Rainsberger. He doesn't tell the issuing judge – doesn't leave the impression that this elderly woman isn't so careful about who she opens the door to. We don't know what the magistrate would have done, and Benner can't have it both ways. He can't have a warrant and say, oh, you know, I was working under a warrant, and at the same time fail to tell the issuing judge facts which would influence that judge's evaluation of the warrant. So very briefly, and then I'll move on, because I agree with you that I think we're fine if we just focus on the hypothetical affidavit here. I didn't say that. Well, that's our position, of course. I understand. Your position is that we should move on from the facts. All right. And I appreciate that. The one final point on that that we raised is just looking to the Burrett v. Dillifson case. Similar situation. It's not on the spot. It's not a hot-pursuit type situation. It's a thorough investigation that lasts many weeks, and then the officer just goes and makes a warrantless arrest. And I think the concern here is if we have the district judge's approach that he took in a footnote, is that officers will be disincentivized to seek warrants because they'll lose the protection. Let me ask you about incentives, Mr. Morgan. The qualified immunity argument that you're making that troubles me is that you seem to offer an incentive to aggressive police officers. If you've got a weak case, juice up the affidavit. Leave out the inconvenient facts. Lie, which we have to assume for purposes of this appeal happened here. Go ahead and lie, and you'll still get qualified immunity if worse comes to worst. That seems to be the incentive that your brief points us toward. So under the established law, the question is if you do that, if you make mistakes in your affidavit, obviously. No, Judge Hamilton said lie. We're not talking about mistakes. First of all, let's go back. Do you agree that for us to have jurisdiction over this appeal, we have to assume that Detective Benner lied or at least recklessly provided information to the court? Yes, so we're stuck with that. But what that means under the hypothetical affidavit approach is that those facts just fall away. That's how you avoid, that's the consequence. You don't think there are any further consequences? Because again, with qualified immunity, we're just trying to figure out a way to take a collateral order doctrine appeal. We're trying to find a way just to avoid factual disputes. And that's how I understand the hypothetical affidavit approach. Those facts fall away, or in the case of omitted facts, they come in. And what that does… Well, let me ask, do you think that evidence that an officer lied to the court can support a reasonable inference that the officer knew he did not have probable cause? I don't know that it would be entirely inappropriate for the court to consider that as to whether the officer believed he had probable cause. The problem is I don't think the officer's subjective intent matters here. If probable cause exists, it's an objective test. If probable cause existed, it's an absolute bar to both claims. So I don't know that the subjective intent of the officer in the end makes a difference to the analysis here. And that's the thrust of our qualified immunity argument. I think one of the primary concerns we have with the district court's decision is it loses sight of who had the burden on the qualified immunity issue. Well, but you know, I understand. He raises it and then Mr. Rainsberger has to defeat the qualified immunity. But looking at this hypothetical affidavit, I'm unimpressed with the probable cause. You make a big deal out of the use of the word bash, but William looks at his mother on the floor and there's something over her head and he can see a giant pool of coagulated blood. And he's afraid to lift up the cloth because he's afraid that will get the bleeding to start again. He's taken emergency medicine, you know, EMT sorts of classes. He knows a few things. So he uses the word bash as opposed to gunshot, as opposed to pound, as opposed to anything. The last I checked in the medical profession, the word bash isn't a term of art. It's just a descriptive word. So I'm having trouble making too much of that. And I'm also concerned that the fact that her purse and prescription medicines are missing is not something that helps probable cause vis-à-vis William. In fact, it goes quite in the opposite direction. If you imagine a thief, they're going to grab the purse and the pills and then they'll wait until they're safely somewhere else to see if the pills have some street value, which apparently these did not. But the thief probably doesn't know that at the time they're stolen. So, you know, the fact that the first firefighter, you know, thinks that maybe there was a gunshot wound doesn't really take me one way or the other. And then this misleading account, the district judge says, the district judge watches the videos at the Kroger. The whole thing is just spun in ways to make factual issues about this. And as you know, under Johnson against Jones, qualified immunity can be a protection from trial. But it isn't always when there are factual issues that need to be resolved. And so, but the question here is taking those facts, as the district court assumed them, and applying that to the qualified immunity standard or not. I'm sorry. So we're taking the fact that somebody else came in and stole her purse. We're taking the fact that William, you know, is horrified that he sees his mother there with blood all over the place. Somehow or another, blood is coming out of her skull. You know, so he knows that there's that problem. We're taking the fact that he goes out so that he can waive the ambulance in, since it's a weavy apartment complex, and he's afraid they won't find it. Taking all those facts. And briefly, before I eat up too far into rebuttal, the point I want to make on the qualified immunity issue is, as this court said in Whitlock, and again in the Betker decision, it discusses Junker v. Massey, it's not enough for it to be clearly established that there's an arrest without probable cause. The discussion in Betker about Junker talks about the court had never found that an affidavit akin to this one, with these sorts of facts, materially similar, was not enough for probable cause. And this is where the burden becomes important. It was William's burden to come forward. I understand that point. I wanted to ask you, though, about a case that I don't think is in the briefs, but it's called Sornberger v. Knoxville, 434 F. 3rd, 1006, which involved a similar kind of sequence where an officer went to federal prosecutors to seek probable cause in a prosecution and was told, no, it's not enough. Then, in essence, spun and repackaged and added some falsehoods to the account, took it to a state prosecutor and got probable cause, and a prosecution was launched. Our opinion reversed summary judgment for those officers and said that this question of whether probable cause existed was for the jury, including whether arguable probable cause existed, was for the jury and would need to go to trial. It sounds a lot like this. And I apologize, I'm not familiar with Sornberger. Do you recall the date? Does that post-date Bell v. Irwin? Because there are earlier Seventh Circuit cases that suggest that sort of applying that sort of close probable cause question, applying that standard, the agreed-upon facts to that standard, is a question for a jury. I think since Bell v. Irwin, which is a 2003 decision, the cases appear to go. The Sornberger was 2006. So if there are no further questions at this time. Yeah, I understand. Okay, that's fine. Thank you. Save the rest. Mr. Waples? Waples. Waples. Richard Waples on behalf of the plaintiff, William Rainsberger, who is here with us today. May it please the Court. The district court was correct to determine that reasonable jurors could conclude that Officer Benner lied and misrepresented and omitted material facts from the probable cause affidavit, and that they could conclude he violated the Fourth Amendment and that probable cause was lacking fully in his arrest. The Court also correctly concluded that the law was clearly established that officers who lie and mislead courts in order to establish probable cause are not entitled to qualified immunity because the law is clearly established otherwise. So are you saying in that sense that it's the subjective motivation of the officer that informs probable cause or something different? No, I think probable cause is an objective reasonable standard. Right. But it's clear that the officer in this case, and we accept the facts in this interlocutory appeal, has to accept the facts that the district court found that there were at least seven material omissions or falsehoods in the probable cause affidavit. Can I ask you how the alleged lies play into the qualified immunity analysis? My question is this. Are you saying that the fact that the officer lied deprives him of qualified immunity somehow informs the first question, which is, was this law clearly established? Was there a constitutional violation? Or does it simply deprive him of the benefit of the arguable probable cause standard? Even if probable cause, in fact, didn't exist, it would have been reasonable for an officer to have thought it did, but that that inquiry isn't really focused just on the hypothetical affidavit. It sounds to me like what you're saying that inquiry would be focused on is, well, of course you don't get it because it couldn't be that any reasonable officer would think it was okay to lie. I think that question is almost exactly like Judge Hamilton's question to Mr. Morgan. That is, is the fact that the officer lied, can we take that to create an inference that he knew that there wasn't probable cause here and that there wasn't probable cause here? And I would point the court to the case of Juris Mercis versus McAllen, where this court specifically said that was the case. It's a 1992 decision. It's at 957 Fed Second, 345, and at 350 there's a discussion. And it says, okay, well, the officer lied in order to obtain the warrant. We know that. And it says we have to look at probable cause from an objective reasonable officer, and would an objective reasonable officer know, given that he lied, that there wasn't probable cause? And the court said someone standing in McGowan, he's the officer that lied to Shoes, would have further reason to doubt that probable cause existed if he knew that McGowan felt it necessary to commit perjury in order to procure Juris's indictment, which required that the grand jury find probable cause. So I think the court's already used the fact that officers lied in order to help establish the fact that there's really no probable cause here. And we know Officer Benner knew there wasn't probable cause here. He created a probable cause affidavit, presented it. There was no charges filed. He goes back. He says he tells the Criminal Justice Institute, and this is Supplemental Appendix 1, his email to Basham at the Criminal Justice Institute because Becky Ransberger, William's sister, had applied for victim assistance funds, and this was in early 2015, that, hey, or 2014, and she emails Benner and says, hey, should I allow these funds? And he emails back and says, the sons are suspects in the case, and I can't make any arrest until the DNA evidence comes in. And, of course, the DNA evidence comes in, which implicates others, excludes William, and he ignores that evidence, doesn't present that to the court, instead creates this false 240 phone call, which is the most indicting sort of evidence against William. It places William in his mother's apartment at 2.40 p.m., a whole hour before he calls 911 and says that, hey, my mother's been injured, and he says that phone call occurred at 3.40 to his brother from his mother's phone. So you're basically, I guess, in a situation where that's just a disputed issue of fact. I understand the theory being it went through Chicago, so it got a central time stamp somehow on the phone records, and I don't know if there's a countervailing theory. There's not. There's no disputed issue of fact. There was no 240. Everybody understands or everybody concedes that the 240 was just a question of time zones. Right. And that Benner knew that before. Right. Benner had the Ruth Ransburgers where the phone call originated. Her phone, AT&T landline phone records, which are in the supplemental appendix highlighted, that show that there was one phone call made from that phone, and that was at 3.40. Now, Robert Ransburgers' cell phone records where he received the call do have the 240 and the 340 call, and they're just like a second, and it's a switch. Basically, it's one call. It gets switched because the magic of the Internet, which is a call that's going to go half a mile to Chicago. To Chicago. But it does, and he knew that information. Plus, he admitted in his deposition he had information from the police detective that analyzes these phone records before he created a second probable cause affidavit. That point, I gather, is disputed, but you get the benefit of the doubt on summary judgment. That's true, but be that as it may, he admitted that he had it, and he had certainly, without any doubt, had the AT&T record showing only one phone call. Mr. Waples, in your case, do you want us to consider any information from Mr. Ransburgers' affidavit or Attorney Hennessy's affidavit that the district court did not, or is it better from your perspective that we stay away from that? Well, I don't think you need to, because I think it's clear that the district court's decision was correct, and there's just absolutely no probable cause looking at that warrant. But if you do go outside the warrant, as Officer Benner has permitted or asked you to do, and consider other facts, which I think raises some factual disputes that would divest this court of this narrow interlocutory jurisdiction, then it certainly ought to consider the other facts that create those. So you mean the facts such as the earlier assault in the parking lot? What else are you thinking? Well, and the fact that it's a high-crime area, the fact that whether her apartment appeared orderly or not. Officer Benner says it did. William Ransburgers said it didn't. There were some doors open anyway, right? Right, the doors open to a lot of things, and the court's going to basically be reviewing de novo a summary judgment record and deciding facts, which isn't what the purpose of this interlocutory appeal is. We don't think the court needs to consider those facts, but if it does, it should consider them and find that there certainly wasn't probable cause given the array of evidence that showed that there wasn't. Did the police ever prosecute anybody else for this murder? No, and that's very sad. The evidence shows that Officer Benner focused on William within 12 hours of his mother's death, which was the day after she was attacked, as his only suspect, and we submitted a report of Dr. Rosmo talking about confirmation bias and rejection of other theories that would support other things in tunnel vision, and I know the district court said, well, a lot of that's going to be excludable, and perhaps it is, but not that part because that part, I think, comes within this court's recent Brown decision about expert police testimony and what might be permissible about training and national standards on training, and certainly Dr. Rosmo says, hey, I train officers, I train detectives in how to look at things, and of course you can consider William. You should consider William. He's a suspect. Everybody's a suspect, but what Officer Benner did was exclude all evidence that said it was anybody else, such as the DNA evidence. He says, oh, wait, we're not going to make any arrests. The sons are suspects until we get the DNA, and then the DNA implicates others, and he doesn't even follow up. There's other factual issues underlying that. I guess Officer Benner says, well, but the unknown person's DNA could have been the emergency responders or the physicians, but what we don't know is what handling procedures were used, how many people did this, whether DNA can transmit to rubber gloves and then on to something. I mean, I seem to see there are a lot of questions. But if you want to charge somebody with probable cause, and I know for committing a murder and you have months and months to investigate, and this is a very weighted decision, and this court has said probable cause is common sense determination. The Supreme Court says that. It's not proof beyond a reasonable doubt. It's not even preponderance of the evidence, but it's a reasonable standard. It requires enough evidence to conclude that a reasonable officer would conclude that this person committed this crime. And if you've got months and months to consider such a weighty crime, charging somebody with killing his own mother, and you don't even follow up on that DNA evidence to see if this is the right guy or not, and you just ignore it when it comes back and says it's somebody else, that, as Dr. Rosmo says, is tunnel vision, and you're not even trying to find really the killer. So he doesn't even do a survey of the scene. He doesn't even go and look in the dumpster to see if there's some track. Counsel, I'm going to ask you a question about arguable probable cause. So it's your position that taking the hypothetical affidavit, the court asks whether probable cause existed, but it's your position that the court does not then go on if it concludes that probable cause does not exist, does not ask what a reasonable officer thinks based on this hypothetical affidavit, which includes otherwise excluded exculpatory evidence and omits lies or alleged lies, you don't ask the arguable probable cause question? I think that the question about whether it was arguable probable cause is the same question about whether the law was clearly established, as this court said in Gutierrez, that that's the same inquiry, and here... Why isn't it the same as the Leon inquiry, even if, with the luxury of hindsight, we might look at the hypothetical affidavit and say, gee, it doesn't quite cross the line, but a reasonable officer could think that it did, in which case you would find it permissible for the officer to move forward on that one. Which is, would a reasonable officer consider it in light of clearly established... It's not exactly the same thing as arguable probable cause. It seems to me it's very close. Very what, I'm sorry? Very close, the Leon approach. I think it is, and I think Judge Tinder's decision in Gutierrez really explores probable cause and arguable probable cause and basically says it's the same thing as whether the law is clearly established. And here the law is clearly established if you don't have enough evidence to get a... to put in a warrant and obtain a... But I guess I still don't follow you, because if you look at the hypothetical, it still seems there are two questions. If you look at the hypothetical affidavit, you can ask, as Judge Wood was saying, does this past Fourth Amendment muster? Was there probable cause? But you could still think, even though it doesn't cross the line, we're going to cut people some slack. There might be room for a reasonable officer to make a mistake there. And I guess what I'm asking you is, are you saying that a defendant accused of lying, as Officer Benner was here, forfeits that question, that part of it? I'm not saying that at all, Judge. And I know that the district court said, well, I'm not going to consider arguable probable cause, because that's more of a decision about on the street and a quick decision about whether it's probable cause or not. And I think that's correct in one part, but I don't think it's correct to say that an officer submits a warrant is not entitled to an arguable probable cause standard, since that's a law. But I'm just saying it's the same standard as asking the question, given these set of facts, whether an objectively reasonable officer would consider it clearly established that he can't do what he did, which is submit this affidavit with all these lies and omissions and with what he acknowledged he didn't have probable cause before he submitted it. And is that question of arguable probable cause ultimately one that a jury may need to address? I think it is. Always, or just on the facts of your case. So is it the case that... Arguable probable cause, it's... We decide that question as a matter of law from time to time, but if it's close, it can be a jury question. Well, I think that's what... I haven't read that Swarnberg decision that you mentioned earlier. It's not in the briefs, and I apologize for that. But if that's what you held there, that's what you held there. It's not an accusation. Arguable probable cause actually creates a lot of confusion, because I do think it's the same inquiry as whether the law is clearly established or not, what an objectively reasonable officer would do. But here, an objectively reasonable officer in Benner's position would know he can't submit lies in an affidavit. Of course. So that means any time a plaintiff in a 1983 claim raises a plausible claim that there are lies in an affidavit, essentially then the qualified immunity defense is lost for purposes of immediate appeal, because then it's always a jury question. Well, I think if there's well enough facts to stay in an affidavit that aren't false, then I think the law is that he can still get qualified immunity, that there's probable cause there. So you go back to the hypothetical affidavit? Either side of that is you get it either on a substance or you get it on a reasonable inquiry. So the question is, looking at the hypothetical affidavit, could a reasonable officer conclude that what is in the hypothetical affidavit establishes probable cause? The question is not would a reasonable officer think it's OK to lie, because you'll always feel that. Right, that's true. But I think you have to look at the entirety of the facts and what this reasonable officer would know. Looking at this affidavit and what remains, you have to know what he did before in order to inform, and that's what Juris Person McCowan said. An objectively reasonable officer in those shoes would say, well, wait a minute, I have these facts, but why did I put all these other facts in? You put them in because you know that this doesn't constitute probable cause, which Officer Benner essentially admitted in his email to Basham. It's not even close. Williams speculates his mother got hit in the head correctly. He doesn't see the smudge on her head. That's about what Officer Benner had, and he doesn't have any evidence until he says this 240 phone call that actually places William in an apartment. It's a circumstantial case. There's no hard evidence. There's no witnesses. There's no confession. There's no murder weapon. As Benner said, it's an entirely circumstantial case, and there's certainly not enough probable cause. Thank you. All right. Thank you very much, Mr. Waples. Mr. Morgan. Thank you. Very briefly, I do want to focus on Judge Barrett's line of questioning, so I think if I heard correctly, I do think Mr. Rainsburg is now conceding that the district court erred in saying that you just don't apply the arguable probable cause standard when you have a hypothetical affidavit, which was essentially the approach the district court took, and that's consistent with this court's decisions in Whitlock and Lever. I think it was in Lever where the court explicitly said that the hypothetical affidavit approach allows for the availability of qualified immunity, and that's the clearly established law standard. That's the arguable probable cause standard. So we come back to the burden to show that it was clearly established that these sorts of facts could not have established. No reasonable officer could have disagreed and felt like these facts established probable cause. Okay, so let me ask you then, as I just asked Mr. Rainsburg's counsel, then you think the inquiry just strips down and looks at the hypothetical affidavit and says, we're excluding everything else that's not present on this hypothetical affidavit, and we're just asking on the facts of this hypothetical affidavit, could a reasonable officer conclude there was probable cause? Not, as your opposing counsel said, considering all of that other stuff too, which suggests lies and omissions on the part of the officer. If I may, I think there are two pieces to that. Yes, because the subjective motivation of the officer doesn't matter. The Mustafa case says even if the officer has malicious motives, as long as what's there is enough to meet the probable cause standard, it doesn't matter. But the other point on that, and it's a little more complicated here, because the district court didn't look, they present some other evidence and say, okay, fine, here's your hypothetical affidavit, but what about these other things that might have negated probable cause once it was established? And the district court didn't get to those things. So here, I think this court could do one of two things. It could either say, based on this hypothetical affidavit, there's enough that it's arguable probable cause. Now you still have to consider some of the things that the district court didn't reach the DNA evidence and some other things. This court could choose to do that on its own in the first instance and sort of look at the evidence and try to find what's disputed, what's not, and make that determination. Or maybe it's simply district court, you got it wrong, the arguable probable cause standard does apply when you create a hypothetical affidavit, and you send the case back and have the district court look at those facts. I think either of those approaches would make sense. All right, thank you very much. Thanks to both counsel. We'll take the case under advice.